1
2
3
4
5
6
7
8
9
10
11
12

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Michael D. Powell (SBN 202850)
mikepowell@quinnemanuel.com
Michelle Ann Clark (SBN 243777)
michelleclark@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Scott L. Watson (SBN 219147)
scottwatson@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Plaintiff Qualcomm Incorporated*

FILED

JUL 27 2018

CLERK, U.S. DISTRICT COURT
NORTHERN DIST. OF CALIFORNIA
SAN JOSE

13

UNITED STATES DISTRICT COURT

14

NORTHERN DISTRICT OF CALIFORNIA

15
16
17
18
19
20
21
22
23

CV-18

IN RE: SUBPOENAS TO INTEL CORP., IN CONNECTION WITH: QUALCOMM INCORPORATED,

Plaintiff,

v.

APPLE INC.,

Defendant.

Case No. MISC 80124 MISC

Related to Case No. 3:17-CV-01375-DMS-MDD

Pending in: The United States District Court for the Southern District of California

**NOTICE OF MOTION AND QUALCOMM INCORPORATED'S MOTION TO COMPEL COMPLIANCE WITH DOCUMENT AND DEPOSITION SUBPOENAS TO INTEL**

24
25
26
27
28

**NOTICE OF MOTION AND MOTION**

TO INTEL CORP. AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 31, 2018 at a time to be determined by the Court, or as soon thereafter as counsel may be heard, in a Courtroom to be assigned, located in the United States Courthouse located at 280 South 1st Street, Room 2112, San Jose, California, 95113, Qualcomm Incorporated ("Qualcomm") shall and hereby does move the Court for an order, pursuant to Federal Rule of Civil Procedure 45, to enforce the document and deposition subpoenas served on Intel Corp. ("Intel") on April 20, 2018.

This Motion is made on the following grounds:

In its subpoenas, Qualcomm requested documents and testimony relating to Intel components used in Defendant Apple Inc.'s ("Apple's") accused products that provide functionality relevant to Qualcomm's patent infringement claims. Specifically, Qualcomm requested documents and testimony relating to Intel's radio frequency ("RF") components used, or planned for use, in Apple mobile products from 2016 through 2018. The requested testimony is relevant to direct and indirect infringement as well as remedies.

Intel has provided documents and testimony relating to its RF components used in 2016 and 2017 Apple mobile products, but refuses to provide documents and testimony relating to its RF components for 2018 Apple mobile products. The parties met and conferred on several occasions. While the parties initially reached an agreement on document production, Intel reneged on that agreement. In addition, the parties have been unable to reach a resolution regarding the appropriate scope of Intel's obligations to provide testimony.

Pursuant to Local Rule 37-1, Qualcomm certifies that it has met and conferred in good faith in an attempt to narrow and/or resolve its dispute with Intel.

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   BACKGROUND ..................................................................................................... 4

      A.   The Patent Infringement Action ................................................................ 4

      B.   Discovery from Intel in the ITC Action .................................................... 5

      C.   Qualcomm's Diligent Pursuit of the Relevant Discovery ......................... 5

      D.   The Categories of Document Requests and Topics in Dispute .................. 7

III.  LEGAL STANDARD .............................................................................................. 7

IV.   QUALCOMM'S ARGUMENT IN SUPPORT OF ENFORCEMENT OF THE
      DOCUMENT AND DEPOSITION SUBPOENAS ................................................. 8

      A.   Intel Should Be Held to Its Agreement to Produce Highly Relevant
           Documents ................................................................................................... 8

      B.   Intel Should Be Ordered to Produce A Witness Regarding the Documents It
           Agreed to Produce ...................................................................................... 9

V.    CONCLUSION ...................................................................................................... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page**

### Cases

*Brown-Stahlman v. Charter Tr. Co.*,
No. CIV. 04-CV-322-SM, 2006 WL 680874 (D.N.H. Mar. 16, 2006).................................. 9

*Mobile Electronic Devices and Radio Frequency and Processing Components Thereof,*
ITC-337-TA-1065 ........................................................................................................... 1, 4

*Negotiated Data Solutions, LLC v. Dell, Inc.*,
No. C09-80012, 2009 WL 733876 (N.D. Cal. Mar. 17, 2009) ............................................ 7

*Qualcomm Inc. v. Apple Inc.*,
Case No. 3:17-CV-01375 (S.D. Cal.)................................................................................. 1, 4

*Soto v. Commercial Recovery Sys., Inc.*,
No. C-09-02842 PJH DMR, 2011 WL 1298697 (N.D. Cal. Apr. 4, 2011) ......................... 9

*Youngevity Int'l Corp. v. Smith*,
No. 16CV00704-BTM-JLB, 2017 WL 6541106 (S.D. Cal. Dec. 21, 2017) ....................... 9

### Statutes

Fed. R. Civ. P. 3 ........................................................................................................................... 8

Fed. R. Civ. P. 45(a)(1)(A)(iii)..................................................................................................... 7

1                **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.    PRELIMINARY STATEMENT**

3         This is an action to compel Intel Corp. ("Intel") first to produce documents and materials

4 Intel *already agreed* to produce before delaying and ultimately reneging on its agreement and,

5 second, to produce a witness to testify regarding these same documents Intel already agreed to

6 produce.  This action arises out of pending litigation to enforce five (5) of Qualcomm

7 Incorporated's ("Qualcomm's") patents against infringement by Apple Inc. ("Apple").  *Qualcomm*

8 *Inc. v. Apple Inc.*, Case No. 3:17-CV-01375 (S.D. Cal.) (the "Patent Infringement Action").  Intel

9 provides Apple radio frequency ("RF") components for Apple-branded mobile devices, including

10 the accused Apple products at issue in the Patent Infringement Action, which rely on Intel RF

11 components to perform certain accused functionalities.  But Intel refuses to produce the requested

12 information for RF components that Intel has already commercially released and will be

13 incorporated in 2018 Apple iPhones.

14         The requested technical information regarding Intel's RF components is highly relevant,

15 and in fact critical, to Qualcomm's ability to enforce its intellectual property rights in the Patent

16 Infringement Action.  Intel cannot credibly dispute such evidence is relevant for at least two

17 reasons.  *First*, Intel has already agreed to provide the technical documents and materials, and

18 testimony related thereto, sought by the present motion.  In particular, this technical information

19 includes documents and materials (such as source code, register transfer level ("RTL") code,

20 specifications, and schematics) for Intel's current generation of RF components that were

21 commercially released since Intel's production in the co-pending investigation before the U.S.

22 International Trade Commission (in which the same patents are at issue as in the Patent

23 Infringement Action) and which are incorporated into Apple mobile products released or to be

24 released in 2018.  *Mobile Electronic Devices and Radio Frequency and Processing Components*

25 *Thereof*, ITC-337-TA-1065 (the "ITC Action.").[1]  Even *assuming arguendo* that Intel initially had

26

27 ─────────────────────
    [1]  The parties agreed that the discovery provided by Intel in the ITC Action is subject to cross-
28 use in the Patent Infringement Action, and thus discovery regarding the prior generation RF
components is not at issue in this motion.

1   objections to the relevance of this information, those objections were overcome when Intel

2   affirmatively agreed to provide the documents and materials.  *Second*, Intel provided documents,

3   materials, and testimony of the same nature regarding prior generations of the same RF

4   components in the ITC Action.  There is no meritorious reason that Intel cannot provide updated

5   technical information for its current generation of RF components now.

6          On May 18, 2018, after several lengthy meet-and-confers and numerous exchanges of

7   written correspondence, Intel agreed, in writing, to make a supplemental production of the

8   technical documents and materials (e.g., "code (including RTL code), schematics, and high-level

9   architecture specifications" sought by Qualcomm's subpoena.[2]  (Ex. 5 (May 18, 2018 email from

10  B. Baglien to J. Cheng).)  However, weeks passed and Qualcomm saw no production nor

11  communication from Intel.  (Ex. 8 (May 30, 2018 email from J. Cheng to B. Baglien); Ex. 9 (Jun.

12  4, 2018 email from J. Cheng to B. Baglien); Ex. 10 (Jun. 5, 2018 email from J. Cheng to B.

13  Baglien).)

14         Several weeks after Intel had agreed to provide its updated technical information, on June

15  6, 2018, Intel for the first time said it required the court to enter a supplemental protective order to

16  initiate production.  (Ex. 11 (Jun. 6, 2018 email from B. Baglien to J. Cheng).)  Then, only after an

17  additional delay of two more weeks, Intel provided a draft it claimed "substantially mirror[ed] the

18  protective order from the" ITC Action.  (Ex. 14 (Jun. 22, 2018 email from N. Garcia to J. Cheng).)

19  It did not.  (Ex. 15 (July 18, 2018 email from J. Cheng to N. Garcia).)  For example, Intel's

20  proposed protective order would have put various additional restrictions on the use of documents,

21  and access to source code and schematics, that were not in place in the ITC Action.  (*See id.*)

22  After Qualcomm pointed this out and provided a counter-proposal for a supplemental protective

23  order, Intel responded on the second-to-last day of fact discovery in the Patent Infringement

24

25

26     [2]  The subpoenas to Intel also include Requests and Topics related to Apple's counterclaims
       ("Counterclaim Requests and Topics") in the Patent Infringement Action.  While the Counterclaim
27     Requests and Topics are not the subject of this current Motion, and are subject to a different
       procedural schedule, Qualcomm reserves its rights to later seek an order for Intel's compliance
28     relating to the Counterclaim Requests and Topics.

1  Action by indicating it had no intention of providing its promised supplemental production *at all.*
2  (Ex. 16 (July 26, 2018 email from N. Garcia to J. Cheng).)

3      It is clear that Intel's eleventh-hour protective order concerns were merely pretext for its
4  ongoing failure to comply with Qualcomm subpoenas and produce the, in Intel's own words,
5  "limited supplemental production," as now Intel refuses to provide the promised supplemental
6  production—even if its proposed supplemental protective order is entered.  (*Id.*)  Further, the
7  operative protective order in the Patent Infringement Action was attached to both of Qualcomm's
8  subpoenas to Intel, and therefore Intel's May 18th agreement to produce the updated technical
9  information was made with the operative protective order in mind; and Intel has offered no
10  explanation otherwise.  Despite this, Qualcomm considered Intel's proposed supplemental
11  protective order in good faith, and provided its revisions which brings Intel's draft into parity with
12  the protective order in the ITC Action[3]—but Intel has reneged *yet again* on its agreement to
13  provide a supplemental production regarding its 2018 RF components for Apple mobile devices—
14  even if its requested supplemental protective order were entered.

15      To avoid fulfilling its promise to produce the critical technical information, Intel has
16  advanced other arguments that are similarly unavailing.  Intel contended its current generation of
17  RF components relate to "future," unreleased products.  But, in fact, a simple internet search
18  reveals that the RF components have been commercially released, and widely publicized, by Intel.
19  (*See* Exs. 17, 18, 19, and 20.)  Further, Apple has already released at least one 2018 version of one
20  of its accused mobile products.  (*See* Ex. 21 (offering 2018 iPad for sale).)  There is nothing
21  future, hidden, or speculative about Intel's 2018 RF components about which Qualcomm seeks
22  discovery.[4]

23

24

———————————

25  [3]  Intel produced *the same types of documents and materials* in the ITC Action, under the
    protective order in that action.

26  [4]  To the extent Intel now argues that "Judge Dembin's June 27, 2018 order" in the Patent
27  Infringement Action  (Ex. 16) provides a basis for its failure to produce, that position is unavailing
    for at least three separate reasons:  (1) Intel agreed to make its production over a month before this
28  order; (2) the order addresses party discovery; and (3) this Motion seeks information regarding RF
    components that have been commercially released and publicized by Intel.

1        Intel's argument that its "supplemental production . . . will obviate the need for an

2   additional deposition" also fails. (Ex. 13 (June 8, 2018 email from B. Baglien to J. Cheng).)

3   Simply, the supplemental production has not been produced (indeed, Intel refuses to produce it),

4   and thus Qualcomm could not possibly agree to what the production obviates or not.  In any event,

5   the highly technical and detailed nature of the promised supplemental production, which includes,

6   for example, source code and integrated circuit schematics, makes it highly likely that there will

7   be need for additional, follow-up questioning that is properly suited for a corporate deposition.

8        Qualcomm thus respectfully requests the Court order Intel to produce the categories of

9   documents and things it agreed to produce on May 18, including technical materials (including

10  RTL code, source code, High Level Architecture Specifications, and schematics) relating to Intel

11  RF components for 2018 Apple products (including the SMARTi7 RF transceiver and XMM 7560

12  baseband processor); as well as to compel Intel's deposition testimony regarding the technical

13  details and operation of Intel's current generation of RF components.

14  **II.**    **BACKGROUND**

15      **A.**    **The Patent Infringement Action**

16       Apple's mobile products incorporate either a Qualcomm baseband chipset or an Intel

17  baseband chipset although Apple does not brand the products differently. (*See, e.g.*, Ex. 22

18  (teardown of iPhone 7 showing Intel supplied "RF transceivers, the baseband modem, and the

19  (RF) power management IC").)  On July 6, 2017, Qualcomm filed a complaint for patent

20  infringement against Apple in the United States District Court for the Southern District of

21  California. (*Qualcomm Incorporated v. Apple Inc.*, No. 17-1375 (S.D. Cal.); the "Patent

22  Infringement Action.").  The next day, Qualcomm requested the U.S. International Trade

23  Commission institute an investigation of Apple's mobile electronic devices, asserting the same

24  patents as in the Patent Infringement Action. (*Mobile Electronic Devices and Radio Frequency*

25  *and Processing Components Thereof*, Inv. No. 337-TA-1065; "the ITC Action.")  The ITC Action

26  and Patent Infringement Action have run concurrently.

27       Qualcomm's operative complaint in the Patent Infringement Action asserts claims from

28  five (5) asserted patents: U.S. Patent No. 8,633,936 ("the '936 patent"), U.S. Patent No. 8,698,558

1  ("the '558 patent"), U.S. Patent No. 8,838,949 ("the '949 patent"), U.S. Patent No. 9,535,490

2  ("the '490 patent"), and U.S. Patent No. 9,608,675 ("the '675 patent"). (*See* Ex. 1 at ¶¶ 36-45.)

3  The Apple products accused of infringement include the iPhone 7, iPhone 7 Plus, iPhone 8,

4  iPhone 8 Plus, and iPhone X. (*See e.g.*, *id.* at ¶¶ 33, 48, 81, 104, 123, and 140.) Certain of the

5  patented functionalities and capabilities utilize various RF components within the accused

6  products, including the baseband processor and RF transceiver. (*See, e.g.*, *id.* ¶ 107.) In the

7  accused Apple mobile products, these RF components are supplied by Intel. (*See, e.g.*, Ex. 22.)

8     **B.    Discovery from Intel in the ITC Action**

9        Given the relevance of Intel's RF components to Apple's infringing products, during the

10  course of the ITC Action Intel produced over 1.5 million documents, as well as deposition

11  testimony, regarding its prior (though at that time, current) generation of RF components.[5]

12  However, critically, Intel's prior production and testimony is devoid of crucial technical

13  information regarding Intel's current generation of RF components, which were commercially

14  released after Intel's production and deposition in the ITC Action.

15     **C.    Qualcomm's Diligent Pursuit of the Relevant Discovery**

16        In order to obtain discovery regarding Intel's 2018 RF components, Qualcomm served

17  document and deposition subpoenas on Intel in the Patent Infringement Action on April 20, 2018.

18  (Ex. 2.) Intel's first communication regarding the subpoenas was to seek an extension to respond

19  until May 21, 2018, which would have been infeasible given the then-existing discovery cutoff of

20  June 11, 2018—of which Intel's counsel was well-aware since they also represent Apple.

21  Qualcomm compromised to extend Intel's time to respond until May 11 in exchange for an

22  agreement to cross-use its material from the ITC Action. (Ex. 4 (May 7, 2018 email from M.

23  Clark to B. Baglien).)

24        However, when Intel served its responses to the subpoenas on May 11, 2018, it declined to

25  produce any documents and testimony aside from material previously produced by Intel in the ITC

26  Action—material it had already promised for the extension. (Ex. 3.) Moreover, as described

27  _____

28  [5] Qualcomm and Intel have agreed that this discovery from the ITC Action may be cross-used in the Patent Infringement Action.

1  above, Intel's production and testimony in the ITC Action is severely deficient at least because it

2  lacked critical technical details regarding Intel's current generation of RF components.

3       After several meet-and-confers and exchanges of written correspondence, on May 18, Intel

4  appeared willing to cooperate, offering a "limited supplemental production of technical materials

5  relating to relevant components designed for 2018 iPhone models" in exchange for Qualcomm's

6  agreement that the limited production would satisfy certain requests in the document subpoena.

7  (Ex. 5.)  In the interests of obtaining a prompt production from Intel and hoping to reach a

8  mutually agreeable resolution that would not unduly burden Intel, Qualcomm agreed.  (Ex. 6 (May

9  23, 2018 email from J. Cheng to B. Baglien).)

10       But Intel went back on its word.  Intel failed to produce the material and still has not

11  produced the material two months later.  (Ex. 16.)  For several weeks after Intel agreed to

12  supplement its production, Intel ignored repeated communications from Qualcomm's counsel until

13  finally responding on June 6—five days before the then-existing fact discovery cutoff in the Patent

14  Infringement Action—to break its agreement to produce and demanding a "supplemental

15  protective order" that Intel contended would mirror the terms of the protective order in the ITC

16  Action.  (Ex. 11.)  But this was the first time Intel raised any concern with the operative protective

17  order in the Patent Infringement Action.  (Ex. 12 (June 7, 2018 email from J. Cheng to B.

18  Baglien).)  Intel's eleventh-hour concerns with the operative protective order are questionable

19  given that it had a copy of the protective order for *a month and a half* before objecting, because it

20  was attached to the subpoenas.  (Ex. 2.)  Moreover, Intel had agreed to produce the documents and

21  materials at issue without raising any concern regarding the protective order.  Most recently, the

22  day before the close of fact discovery in the Patent Infringement Action, Intel replied with another

23  counterproposal for a supplemental protective order and indicated it did not intend to provide its

24  agreed supplemental production regarding its current generation of RF components *even if its*

25  *proposed supplemental protective order were entered.*  (Ex. 16.)

26       Similarly, Intel refuses to comply with Qualcomm's subpoena seeking deposition

27  testimony about Intel's current generation of RF components.  Intel has stated, in no uncertain

28  terms and multiple times, that it will not provide any deposition testimony other than the

1 testimony it provided in the ITC Action—testimony that did not, and could not, address the
2 technical details (found in the sought-after documents and materials) relating to Intel's current
3 generation of RF components.  (Ex. 11.)  Qualcomm offered to significantly narrow its deposition
4 topics solely to technical information related to Intel's current generation of RF components, but
5 Intel's only offer has been an "authenticating declaration." (Ex. 7 (May 24, 2018 email from B.
6 Baglien to J. Cheng), Ex. 12.)  In fact, Intel maintained that its (nonexistent) supplemental
7 production will "obviate" the need for any deposition testimony.  Qualcomm cannot blindly accept
8 an authenticating declaration in lieu of a deposition (or Intel's representation that its need for a
9 deposition has been "obviate[d]") without Intel making any supplemental production especially
10 now that Intel does not intend to make the supplemental production *at all*.  Intel's flimsy offer to
11 produce an authenticating declaration in response to substantive subpoena requests demonstrates
12 that it has no intention of complying with Qualcomm's deposition subpoena.

13     **D.     The Categories of Document Requests and Topics in Dispute**

14         Qualcomm seeks the following categories of document requests and deposition topics.
15 Qualcomm's subpoenas and Intel's responses are available in full as Exhibits 2 and 3.

16 • **Category No. 1 (Request Nos. 23-27, 31-33, 36-39, 44-45, 49-53, 56 and Topic Nos.
17   20-24, 28-34, 38-39, 42, 46-50, 53-54):** Documents and testimony relating to technical
      aspects, development, testing, and similar aspects of Intel's RF components for use in
18    2016-2018 Apple mobile products, including Apple's involvement in these aspects.

19 • **Category No. 2 (Request Nos. 28-30, 34-35, 40-43, 46-48, 54-55 and Topic Nos. 25-
20   27, 35-37, 40-41, 43-45, 51-52):** Documents and testimony relating to supplying,
      pricing, marketing, selling, licensing, and similar aspects of Intel's RF components for
21    use in 2016-2018 Apple mobile products, including Apple's involvement in these
      aspects.

22 **III.    LEGAL STANDARD**

23         Federal Rule of Civil Procedure 45 "authorizes the issuance of a subpoena commanding a
24 non-party to attend and testify; produce designated documents, electronically stored information or
25 tangible things in that non-party's possession, custody, or control or permit the inspection of
26 premises." *Negotiated Data Solutions, LLC v. Dell, Inc.*, No. C09-80012, 2009 WL 733876, at *2
27 (N.D. Cal. Mar. 17, 2009) (citing Fed. R. Civ. P. 45(a)(1)(A)(iii)). "The scope of discovery
28 through a Fed. R. Civ. P. 45 subpoena is the same as that applicable to Fed. R. Civ. P. 34 and the

1  other discovery rules." *Id.* Specifically, Federal Rule of Civil Procedure 45 allows parties to

2  "obtain discovery about any non-privileged matter that is relevant to any party's claim or defense"

3  from non-parties. *Id.* When a motion to compel compliance with a subpoena for the purposes of

4  discovery in an action pending outside the jurisdiction, the Court is particularly "permissive" in

5  construing the subpoena and ordering discovery. *Id.* ("A district court whose only connection

6  with a case is supervision of discovery ancillary to an action in another district should be

7  especially hesitant to pass judgment on what constitutes relevant evidence thereunder. Where

8  relevance is in doubt . . . the court should be permissive.").

9  **IV.    QUALCOMM'S ARGUMENT IN SUPPORT OF ENFORCEMENT OF THE**

10  **DOCUMENT AND DEPOSITION SUBPOENAS**

11        **A.    Intel Should Be Held to Its Agreement to Produce Highly Relevant Documents**

12              *1.    Intel's Agreement to Produce Documents Undermines Any Argument that*
              *they Are Irrelevant or Burdensome*

13        Intel's prior agreement to produce the requested documents shows Intel does not seriously

14  dispute that the documents are relevant here. Intel also produced documents relating to prior

15  versions of the components at issue in the ITC Action. Further, Intel's representation that it was

16  "prepared to begin its production immediately (including production of a limited set of technical

17  documents, schematics, and identification of specific documents relating to 2018 iPhone

18  components within Intel's [ITC Action] production that will be available via cross use)" as of June

19  6—if only Qualcomm would agree to a then undisclosed supplemental protective order—shows

20  no disproportional burden could fall on Intel from having to produce the documents, as it is

21  already prepared to produce them. Similarly, Intel agreed to make a supplemental production over

22  a month before "Judge Dembin's June 27, 2018 order" in the Patent Infringement Action, which

23  governs party discovery.

24              *2.    Intel's Agreement Should be Enforced*

25        Intel agreed to produce documents on May 18, fully aware at that time of what the

26  operative protective order was in the Patent Infringement Action, and delayed weeks while

27  ignoring correspondence from Qualcomm's counsel before reneging. Parties rely on agreements

28  regarding the scope of discovery to resolve disputes cooperatively to avoid burdening courts with

1  unnecessary motion practice. Courts often enforce such agreements. *See Brown-Stahlman v.*

2  *Charter Tr. Co.*, No. CIV. 04-CV-322-SM, 2006 WL 680874, at *1 (D.N.H. Mar. 16, 2006)

3  (defendant waived objections to document requests when it delayed responding, reneged on

4  agreement to produce, and a protective stipulation was in place); *Soto v. Commercial Recovery*

5  *Sys., Inc.*, No. C-09-02842 PJH DMR, 2011 WL 1298697, at *2 (N.D. Cal. Apr. 4, 2011)

6  ("Defendant should not be permitted to renege on a compromise of a discovery dispute");

7  *Youngevity Int'l Corp. v. Smith*, No. 16CV00704-BTM-JLB, 2017 WL 6541106, at *10 (S.D. Cal.

8  Dec. 21, 2017) (holding that "refusing to honor a negotiated agreement" to provide search terms

9  for a document production did not satisfy party's discovery obligations). This Court should honor

10  the compromise between Intel and Qualcomm—and refuse to reward Intel's delay and about-face-

11  —by compelling Intel to produce the promised documents.

12  **B.    Intel Should Be Ordered to Produce A Witness Regarding the Documents It Agreed to Produce**

13

14  Intel has no meritorious reason for its refusal to provide deposition testimony regarding its

15  current generation of RF components for 2018 Apple products. Intel contends that it need not

16  comply with Qualcomm's deposition subpoena because it produced witnesses in the ITC Action,

17  and Qualcomm was free to ask these witnesses about Intel's 2018 components. Intel's position is

18  nonsensical. Qualcomm could not have known what questions to ask Intel's witnesses about its

19  current generation of RF components in the ITC Action because it failed to produce—*and now*

20  *refuses to produce*—detailed technical information about those components. Such highly relevant

21  information includes RTL code, source code, and High Level Architecture Schematics. Intel has

22  effectively admitted its failure to produce such evidence by agreeing to a supplemental production

23  of such technical materials in the Patent Infringement Action. (Ex. 5.) (Of course, Intel then

24  reneged on this agreement as described above.)

25  If this Motion to Compel is granted, Intel must produce technical materials regarding its

26  current generation of RF components that were released since Intel's ITC Action production for

27  Apple's 2018 products. Technical details of the same type, e.g., source code and specifications,

28  but pertaining to prior generations of RF components, were produced in the ITC Action. From

1   that production, it is clear that these materials contain granular technical details, described using

2   specialized Intel-specific language, which warrant follow-up questioning through a deposition.

3   Thus, Intel has no basis to argue that it has already produced testimony responsive to Qualcomm's

4   deposition subpoena.

5          Intel also complains that complying with the deposition subpoena would be overly

6   burdensome, particularly because Intel contends that more than one deponent would be required to

7   cover the technical aspects of Intel's RF components, and likely some of these deponents are not

8   in the United States.  Notwithstanding that Intel's argument is testament to the breadth of the

9   information contained in the technical materials sought, and thus warrants an opportunity to ask

10  questions, Qualcomm has repeatedly told Intel that it will work with Intel's witnesses' availability

11  (for example by traveling to overseas deponents or conducting deposition via videoconference).

12         In any event, any alleged burden to Intel is greatly outweighed by the substantial need for

13  and probative value of the deposition testimony.  As the designer and supplier of RF components

14  for Apple's mobile devices, Intel is in possession of crucial technical information regarding these

15  RF components, utilized by the accused functionalities and capabilities in Apple's mobile devices,

16  that Qualcomm does not expect to be able to obtain through party discovery.

17  **V.      CONCLUSION**

18         For all the foregoing reasons, Qualcomm respectfully requests that the Court order Intel to

19  produce documents and things Intel agreed to produce on May 18, which includes technical

20  materials (including RTL code, source code, and High Level Architecture Schematics) relating to

21  Intel's current generation of RF components (including the SMARTi7 RF transceiver and XMM

22  7560 baseband processor).  Qualcomm also respectfully requests that the Court order Intel to

23  produce a witness or witnesses competent to testify on Topic Nos. 20-54 set forth in Qualcomm's

24  subpoena, regarding the technical details and operation of Intel's 2018 RF components.

25  Dated: July 27, 2018                    Respectfully submitted,

26                                      By:  _s/_____

27                                      Michelle Ann Clark
                                        QUINN EMANUEL URQUHART & SULLIVAN, LLP
28                                      *Attorney for Plaintiff Qualcomm Incorporated*